IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ASHLEY ADAMS                    :        CIVIL ACTION
                                :
        v.                      :
                                :
OFFICER ERIC SELHORST, et al.   :        NO. 09-735

MEMORANDUM

Dalzell, J.[1]                              March 18, 2011

Pro se plaintiff Ashley Adams ("Adams") sues New Castle
County Police Officer Eric Selhorst and New Castle County Police
Officers Doe 1 and Doe 2 (collectively, "defendant officers" or
"defendants") on an array of federal civil rights and pendent
state torts claims arising out of her October 4, 2007 arrest for
allegedly sending a harassing text message to her neighbor.
Adams alleges that the officers used excessive force against her
and arrested her without probable cause.

Specifically, Adams brings suit against the defendants
for (1) false arrest and false imprisonment, (2) use of excessive
force,[2] (3) malicious prosecution, (4) selective enforcement, (5)

_____

[1] Sitting by designation pursuant to 28 U.S.C. §
292(b).

[2] Because Adams filed her Complaint pro se, we will
liberally construe it in an effort to do as much justice as
possible. Estelle v. Gamble, 429 U.S. 97, 106 (1976). "[A] pro
se complaint, however inartfully pleaded, must be held to less
stringent standards than formal pleadings drafted by lawyers."
Id. (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc.
8(e) ("Pleadings must be construed so as to do justice"). We
believe that Adams intended to bring her claim of excessive force
under the Fourth Amendment, which protects one against excessive
force by a Government actor, and not the Fifth Amendment, which
protects a witness against self-incrimination.

failure to train, and (6) abuse of process -- all under 42 U.S.C. § 1983[3] -- as well as (7) conspiring to violate her civil rights under 42 U.S.C. § 1985, (8) failure to prevent the conspiracy and intervene under 42 U.S.C. § 1986, and under Delaware tort law for (9) slander, (10) causing her and her pets severe emotional distress, (11) assault and battery, and (12) trespass.

---

[3] Plaintiff also brings these claims under 42 U.S.C. §§ 1981 and 1988, but these sections of Title 42 are not relevant to plaintiff's claims. Section 1981 is limited to issues of racial discrimination in the making and enforcing of contracts. Anjelino v. New York Times Co., 200 F.3d 73, 98 (3d Cir. 1999). Adams does not allege that she is a member of a racial minority, and defendants note in their motion that she is white. She also does not claim that there is any contract dispute before us. Thus, § 1981 does not apply to Adams's case. Section 1988 "recognizes that in certain areas federal law is unsuited or insufficient to furnish suitable remedies; federal law simply does not cover every issue that may arise in the context of a federal civil rights action. When federal law is thus deficient, § 1988 instructs us to turn to the common law, as modified and changed by the constitution and statutes of the [forum] State, as long as these are not inconsistent with the Constitution and laws of the United States." Robertson v. Wegmann, 436 U.S. 584, 588 (1978) (internal citations and quotation marks omitted); see also Fontroy v. Owens, 150 F.3d 239, 243-44 (3d Cir. 1998). Fortunately, all of plaintiff's federal claims have well-defined remedies under federal law, and therefore we need not depend upon § 1988 to resolve any of them.

In addition, Adams claims violations of Article I, §§ 7 and 11 of the Delaware Constitution, which entitle her to a speedy trial and to be free from "cruel punishment." Adams refers to the cited sections of the Delaware Constitution in her Complaint, but does not cite any case in support of her arguments regarding her Delaware Constitutional claims in her response to defendants' motion for summary judgment. Thus, we will grant defendants' motion for summary judgment with regard to Adams's Delaware Constitutional claims. Finally, Adams also cites "Del. C. 3701" in her complaint, but we are not aware of this Delaware law, and in any event, she does not present any arguments in support of defendants' alleged violation of this section of the code, and we will grant defendants' motion with regard to it.

The parties have filed cross-motions for summary judgment. For the reasons we discuss in detail below, we will grant defendants' motion for summary judgment, deny plaintiff's partial motion for summary judgment, and enter judgment for the defendants.

## I.  Factual Background

On October 1, 2007, Officer Selhorst responded to a call from the residence of Yaw and Ninette Aidoo, which is located at 412 Oregano Court, Bear, Delaware. Def.s' Opening Br. in Sup. of Their Mot. for Sum. J. ("Def. MSJ"), Ex. A at 1.  Mr. Aidoo told Officer Selhorst that he had received a harassing text message from cellphone number (302) 393-3525. Id.  The message read, "After Ninette (Yaw's wife) goes to sleep you can sneak over and give me what I really need, it has been a long time." Id.  Mr. And Mrs. Aidoo believed that the cellphone number might belong to their neighbor, Ashley Adams.  Id.  The Aidoos were concerned that Adams may have obtained Mr. Aidoo's cellphone number from her employment at Delmarva Power (later learned to be Conectiv Power) because his cellphone number was unlisted.  Id. Mrs. Aidoo indicated that she thrice had called the cellphone number from which the text had come from her daughter's cellphone, but no one had answered those calls.  Id.  The voice in the voicemail message was not familiar to her nor did it identify the speaker.  Id.  A later search of the Criminal

Justice Information System ("CJIS") revealed that Adams had used
this cellphone number before in separate police matters.  Id.

On October 2, 2007, Officers Selhorst and Mancuso went
to Adams's residence to speak with her about the text message.
Id.  Adams told the officers that she did not know her neighbors'
names, but confirmed that her cellphone number was the same as
the number identified in Mr. Aidoo's text message.  Id. at 1-2.
She also confirmed that she had received three unknown telephone
calls on her cellphone the previous evening, and that she had not
answered them.  Id. at 2.  Adams told the police that she was not
employed, and then later told them that whether she still worked
for Delmarva Power was irrelevant.  Id.  After determining that
the cellphone number in question matched Adams's, Officer
Selhorst drafted a harassment warrant for her.  Id.  Magistrate
Judge Kenny signed the warrant and Officer Selhorst had it filed
by Data Officer Cpl. K. Breitigan.  Id.

On October 4, 2007, Officer Selhorst contacted Conectiv
Power Security and confirmed that Adams worked for Conectiv
Power, but found that Mr. Aidoo's cellphone number did not appear
on his account at the utility.  Id. at 3.  Later that same day,
Officers Selhorst and Mancuso went to Adams's house to execute
the harassment warrant.  Id.  Adams told the officers she did not
want her pets to leave the house and so met Officers Selhorst and

Mancuso in her garage.[4]  _Id._  The Officers then placed Adams in handcuffs in her garage.  _Id._  Once in handcuffs, Adams told the officers that she had already been down to the police station earlier in the day and had turned herself in on the harassment warrant.  _Id._  The officers confirmed this through a CJIS check and immediately released her from custody.  _Id._  Officer Selhorst questioned Adams about the particulars of the case, but as soon as Adams stated that she wanted to speak to counsel prior to making any further statements, the officers left.  _Id._

Adams claims that she suffered injuries, mental anguish, pain, property damage, consequential property damage, shock, intentional severe emotional distress, emotional harm, "horrific and terrifying abuse of household pets causing severe reaction to the impending 'home invasion,'" "immediate and delayed nervous systems reactions," public scorn, hatred, ridicule, economic losses, and threats to her life and physical

---

[4] Adams provides her own account of what happened in an unsworn and unsigned statement.  Pl. Resp., Ex. A.  Because the statement is neither an affidavit nor a sworn declaration, we cannot consider it.  _See_ Fed. R. Civ. P. 56(e)(2).  But in Ex. I to her response (doc. no. 75), Adams supplies what defendants did not, and that is Officer Selhorst's affidavit of probable cause, dated October 3, 2007, which authenticated his averments in the lengthy police report he wrote that was attached as Ex. A to his affidavit.  This critical information is therefore "on file" within the meaning of Fed. R. Civ. P. 56(c)(2).  It should be noted that all these records refer to Selhorst's given name as "Erich", not "Eric" as stated in the Complaint.

safety as a result of the officers' actions.  Compl. ¶¶ 12, 22, 30, 37, 40, 43, 44, 47, 50, 53, 57, 60-66.

Adams filed her Complaint on October 1, 2009.  We ordered the defendants to provide the names of Officers Doe 1 and Doe 2, and we granted Adams leave to amend her complaint by November 12, 2010.  Adams declined to amend her Complaint to supply the names of the other two officers.[5]  Because there is no material issue of fact that Adams failed to amended her Complaint within the deadline we set, defendant Officers Doe 1 and Doe 2 are entitled to summary judgment because Adams never identified them.  "This omission clearly frustrates the requirement that § 1983 complaints contain, <u>inter alia</u>, sufficient facts to provide defendants with adequate notice to frame an answer."  <u>Tillio v.</u>

---

[5] Adams baldly claims that she did not receive our October 22, 2010 Order allowing her to amend her complaint until November 12, 2010, and that defendants never provided the name of the female officer who accompanied them.  Given that (a) the clerk had on file her address in Bear, Delaware and duly mailed it to her, and (b) defendants' counsel went to the trouble to advise her in a letter three days later -- sent certified and first class mail <u>and</u> Federal Express -- that we on October 22, 2010 "entered a Scheduling Order" setting a December 13, 2010 deadline for discovery and obliging the parties to "provide the names of John Doe or Jane Doe as listed in the Complaint," <u>see</u> doc. no. 36 (Oct. 25, 2010 ltr. from Harshal Purohit-Patel to Ashley Adams), we do not credit this claim of non-receipt.  But even after asserting this claim of non-receipt, Adams never requested an extension of time to file an amended complaint out of time.  In view of the months that have passed since the claimed non-receipt, Adams has waived any right of further amendment.  And given defendants' sworn denial of the presence of a female officer -- an officer as to whom we find no evidence in the record -- we find this argument also unavailing.

Montgomery County, 695 F. Supp. 190, 193 (E.D. Pa. 1988)(Pollak, J.).  Thus, only the claims against Officer Selhorst remain viable.

## II.  **Analysis**

The parties have filed cross-motions for summary judgment.[6]  In their motion, defendants argue that they are entitled to summary judgment because there is no material issue of fact that the plaintiff was arrested based on probable cause and was denied due process or equal protection, falsely arrested, subjected to cruel and unusual punishment, arrested through the use of excessive force, or maliciously prosecuted.  Defendants also contend that they are entitled to summary judgment because there is no issue of material fact that the plaintiff's claims that defendants conspired against her are based on broad and conclusory statements.  Defendants argue that they are entitled to summary judgment because plaintiff's claims for failure to train, failure to intervene, and violations of 42 U.S.C. § 1981 are frivolous.  Def. MSJ at 3.  Finally, defendants claim that plaintiff's claims of slander, abuse of process, intentional infliction of emotional distress, assault and battery, and trespass are meritless, and, even if we should find that these

---

[6] Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Whenever a factual issue arises which cannot be resolved without a credibility determination, the Court must credit the non-moving party's evidence over that presented by the moving party.  Id. at 255.

claims are not meritless, the County and Municipal Tort Claims Act immunizes the officers from suit on any and all tort claims.

Plaintiff moves for partial summary judgment on her failure to train, excessive force, malicious prosecution, intentional infliction of emotion distress, false arrest and false imprisonment claims.

### A.  Plaintiff's § 1983 Claims

Section 1983 of 42 U.S.C.[7] does not create substantive rights, but provides a remedy for the violation of rights created under federal law. Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985); Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). A prima facie case under § 1983 requires a plaintiff to demonstrate that: (1) a person deprived her of a federal right; and (2) the person who deprived her of that right acted under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Groman, 47 F.3d at 633.

---

[7] The text of 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

###### i. **False Arrest and False Imprisonment**

Defendants argue that plaintiff has failed to allege facts that demonstrate she was falsely arrested or falsely imprisoned. Def. MSJ at 12. Adams claims that her arrest and imprisonment were not based on probable cause. Pl. Answering Br. To Def.'s Opening Br. of Their Mot. for Sum. J. ("Pl. Resp.") at 13. Adams also claims that the officers falsely arrested her because she had "already presented herself to New Castle County Police for warrant processing." Compl. ¶ 14(b). Adams further alleges that the officers did this in violation of the Fourth Amendment and the Delaware Constitution. Both parties have moved for summary judgment on these claims.

To state a Fourth Amendment claim for false arrest, a plaintiff must allege that (1) there was an arrest; and (2) the arrest was made without probable cause. Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). In evaluating a false arrest claim, "[t]he proper inquiry . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Groman, 47 F.3d at 634 (internal punctuation omitted) (quoting Dowling, 855 F.2d at 141). And "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." Id.

at 636 (citing <u>Thomas v. Kippermann</u>, 846 F.2d 1009, 1011 (5th Cir. 1988).

"An arrest was made with probable cause if 'at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.'" <u>Napier</u>, No. 09-2056, 2010 WL 4243893, at *3 (quoting <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964)). Probable cause is an objective inquiry -- "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." <u>Devenpeck v. Alford</u>, 543 U.S. 146, 153 (2004).

At the time of Adams's arrest, the officers knew that (1) a harassing text message had been sent from her telephone number to Mr. Aidoo's cellphone, (2) Adams had received three calls on the same night that Mrs. Aidoo had called Adams's number three times from her daughter's cellphone, and (3) a search of CJIS confirmed that Adams had used this specific cellphone number in a separate police matter. Def. MSJ, Ex. A. Notably, Adams confirmed that it was indeed her cellphone number that was listed on the text message that Mr. Aidoo received. <u>Id.</u>

Adams provides the warrant for her arrest as evidence that Officer Selhorst "knowingly and deliberately or with a

11

reckless disregard for the truth, made false statements,

misstatements or omissions, knowingly and deliberately and with a

reckless disregard for the truth in his affidavit ... that

created a falsehood in applying for the warrant, relied entirely

on Aidoos statement, who fabricated the text message, performing

no independent investigation, depriving Plaintiff of her

constitutional rights while acting under color of law."  Pl.

Resp. at 13, Ex. I.  But the warrant simply restated the evidence

the police gathered and memorialized in the October 2, 2007

police report, which defendants submitted as evidence.  Def. MSJ,

Ex. A.

Adams also claims that the officers should have

subpoenaed telephone records and independently investigated

whether the text message had come from her cellphone.  Adams

argues that Selhorst knowingly and deliberately disregarded the

truth in failing to conduct an independent investigation.  Pl.

Resp. at 13.  But we can swiftly dispatch this argument.  Police

officers are not required to

> investigate independently every claim of
> innocence, whether the claim is based on
> mistaken identity or a defense such as lack
> of requisite intent. Nor is the official
> charged with maintaining custody of the
> accused named in the warrant required by the
> Constitution to perform an error-free
> investigation of such a claim.

<u>Wilson v. Russo</u>, 212 F.3d 781, 792 n.11 (3d Cir. 2000) (internal quotation marks omitted).  Thus, defendants had probable cause to arrest Adams.[8]

There is, however, an unusual twist here and that is that Adams had already turned herself in earlier on the day of her arrest.  Thus, the warrant had already been executed when the officers came to arrest her.  Defendants argue that Adams cannot establish a clearly defined constitutional right, and that, even if she can, they are entitled to qualified immunity.

<u>Donaldson v. Mugavero</u>, 126 Fed. App'x 63 (3d Cir. 2005), through a non-precedential opinion, supplies a useful guide for dealing with Adams's odd case.  There, our Court of Appeals granted qualified immunity to a parole officer who arrested the plaintiff without realizing that his conviction had been vacated.  Plaintiff Donaldson was convicted of possession of a controlled substance by the Court of Common Pleas of Lehigh County, Pennsylvania, in 2000, and released on parole in 2001. Donaldson had also appealed his conviction to the Pennsylvania

---

[8] This holds true under Delaware law as well: "[a] Magistrate Judge's issuance of a warrant is <u>prima facie</u> evidence that probable cause exists. Entrance of a <u>nollo prosequi</u> or acquittal is not sufficient to overcome the <u>prima facie</u> probable cause. Further, probable cause is determined at the inception of the action, not its termination."  <u>Simmons v. Truitt</u>, No. S09C-07-025, 2009 WL 3531799, at *4 n.2 (Del. Super. Ct. Oct. 20, 2009) (internal quotation marks omitted) (quoting <u>Goode v. Kimbro</u>, 2009 WL 693256, at *4 (Del. Super. Ct. Mar. 4, 2009).

Superior Court.  The Superior Court decided that his pretrial suppression motion had been wrongly denied, and vacated his conviction, ordering a new trial.  The Lehigh County District Attorney's Office appealed and filed a petition for allocatur to the Supreme Court of Pennsylvania.  Id. at 64.

In 2002, the Supreme Court of Pennsylvania denied the petition.  Despite the Supreme Court's opinion, the original remand for a new trial nevertheless remained, and Donaldson's attorney advised him to continue to report to his parole officer, Scott Mugavero, until the charges were declared nolle prosequi.  The charges were declared nolle prosequi in September of 2002.  But Mugavero was never informed that the charges had been officially vacated, and thus when he learned that Donaldson was working outside the state he submitted a Delinquency Request Form to the Parole Board.  The Parole Board issued a warrant on September 19, 2002 and that same day Mugavero arrested Donaldson.  When Donaldson's lawyer learned that her client had been arrested and incarcerated, she notified Mugavero that the charges had been declared nolle prosequi.  Mugavero immediately sent a release order to the Lehigh County Prison, and it released Donaldson.  Shortly thereafter, Donaldson filed a § 1983 action against Mugavero for unlawful arrest.  Id.

Mugavero conceded that because there were no active charges he had deprived Donaldson of his Fourth Amendment right

14

to be free from an unlawful seizure.  He argued that, despite this, he still had qualified immunity because he had never been informed of the Superior Court's final disposition of Donaldson's case.  Id. at 65.  Ultimately, our Court of Appeals found that because Donaldson's defense attorney, the District Attorney, and the Clerk of Court had never alerted Mugavero to the final disposition of the case, Mugavero's mistaken belief that he was authorized to arrest Donaldson was reasonable and that he was therefore entitled to qualified immunity.  Donaldson, 126 Fed. App'x at 66.

Here, Judge Kinney signed the warrant for Adams's arrest on October 2, 2007.  Adams turned herself in on the afternoon of October 4, 2007.  That evening, Officer Selhorst returned to Adams's residence to serve the warrant without knowing that Adams had already surrendered.  After Selhorst arrested Adams, she informed him that she had already been down to the station and that the warrant had been executed.  Selhorst checked with CJIS from his vehicle and learned that Adams had indeed been arraigned, given a $500 unsecured bail and a no contact order with Aidoo, and had been released.  Def. MSJ, Ex. A at 4.  Selhorst immediately uncuffed Adams and left.  Id. at 3.

To be sure, the Supreme Court has held that state officials can violate clearly established federal law even when the facts are novel.  Hope v. Pelzer, 536 U.S. 730, 741 (2002).

In order for a federally protected right to be "clearly established" for the purpose of a qualified immunity inquiry, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).

Selhorst clearly understood that arresting Adams after her arrest warrant had already been executed was not proper. He made a negligent mistake,[9] but in this case it also violated Adams's clearly established Fourth Amendment rights.

Because there was no longer a valid warrant out for Adams's arrest when Officer Selhorst handcuffed her, Officer Selhorst violated Adams's clearly established Fourth Amendment right to be free from unlawful seizures. But unlike Donaldson -- where no one informed the parole officer that the vacation of Donaldson's conviction had been made official (although he may

---

[9] In Daniels v. Williams, 474 U.S. 327, 330 (1986), the Supreme Court held that "in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim." Thus, negligent conduct may be enough to state a § 1983 claim, if the conduct caused a constitutional violation.

have also had access to a database where that information was readily available) -- here Selhorst had the information at his fingertips that Adams's warrant had already been executed.

The Supreme Court instructs that "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (internal quotation marks omitted). Hunter determined that this tolerance for reasonable error exists because there would be a high social price if for fear of being sued officers were obliged always to err on the side of caution. Id. Similarly, the Supreme Court noted in Saucier that "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct . . . . If the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Saucier, 533 U.S. at 205.

With regard to the reasonableness standard, our Court of Appeals found that "[t]he evaluation of objective reasonableness is based upon the information possessed by the officer at the time of the illegal conduct." Donaldson, 126 Fed. App'x at 65. And our Court of Appeals has generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant.

17

<u>Berg v. County of Allegheny</u>, 219 F.3d 261, 273 (3d Cir. 2000).
But an apparently valid warrant does not render an officer immune
from suit if his reliance on it is unreasonable in light of the
relevant circumstances. <u>Id.</u> Such circumstances include "other
information that the officer possesses or to which he has
reasonable access." <u>Id.</u>

In his police report, Selhorst wrote, "[a]fter ashley
[<u>sic</u>] was placed into custody she stated she had responded to
headquarters earlier in the day and turned herself in. Writer
confirmed this through a CJIS check and immediately released her
from custody." Def. MSJ, Ex. A at 3. Because the information
that Adams had already turned herself in was easily accessible to
Selhorst -- he could have checked whether she had turned herself
in before he handcuffed her -- we must determine whether Adams's
arrest was unreasonable in light of the relevant circumstances.

This presents a close question. Officer Selhorst had
"reasonable access" to the information that Adams had already
turned herself in. But given that it was only a matter of hours
since she had done so, it was also not out of the bounds of
reason for the officer to assume that Adams had not so soon
surrendered. Furthermore, there can be no dispute that Officer
Selhorst acted reasonably as soon as Adams told him that she had
already turned herself in, rendering this Fourth Amendment
violation <u>de minimis</u> in fact: Adams's pets were not let loose,

she never left her garage, and she could only have been "in custody" (in handcuffs) for a matter of minutes at most.[10]  We find therefore that Officer Selhorst's conduct that evening was within the bounds of tolerance that <u>Hunter</u> and <u>Saucier</u> extend to the officer.

We will grant defendants' motion for summary judgment on the false arrest and false imprisonment claims and deny Adams's motion for summary judgment on these claims.

### ii.  <u>Abuse of Process</u>

Defendants argue that the facts do not support a finding that they abused criminal process as to Adams.  Adams claims that the officers abused the criminal process in arresting her and forcing her to appear multiple times in court without ever prosecuting the case.  "In contrast to a section 1983 claim for malicious prosecution, a section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately

_____

[10] In fact, a review of the CAD data that Adams herself supplies confirms that Officer Selhorst arrived at plaintiff's residence at 9:46 p.m. and left it at 10:03 p.m.  Pl. Resp., Ex. H.  This means that the entire discussion with Adams, walking to her garage, checking CJIS to determine whether she had already turned herself in, and then coming back to Adams's garage to remove the handcuffs from Adams's wrists took precisely seventeen minutes. In her response to defendant's first set of requests for admissions (doc. no. 26), Adams admits that on October 4, 2007 she as "never taken outside of the garage on her residence by a New Castle County Police Officer" and "never placed in a New Castle County Police vehicle".  <u>Id.</u> at admins. 3 and 4.  Her time in custody was thus minimal.

and thereafter is used for a purpose other than that intended by the law." Napier v. City of New Castle, No. 09-2056, 2010 WL 4243893, at *2 (3d Cir., Oct. 28, 2010) (internal quotation marks omitted). If the initial filing of criminal charges and her arrest were improper, then the appropriate claim would be malicious prosecution, not abuse of process. Id. at *3.

Adams presents no evidence, nor alleges any facts, that suggest that Officer Selhorst prosecuted her for any reason other than the one the law intended. And it would not have been Officer Selhorst who chose to abuse the criminal process, but rather the prosecuting attorney. It is therefore a legal impossibility that Officer Selhorst would be liable for violating Adams's rights on this claim. Thus, we will grant defendants' motion for summary judgment on her abuse of process claim.

### ii. Excessive Force and Cruel and Unusual Punishment

Adams claims that the defendants used excessive force against her in violation of her Fourth, Eighth, and Fourteenth Amendment rights. Both parties move for summary judgment on this claim.

With regard to Adams's request for relief pursuant to the Fourteenth Amendment, the Supreme Court has held that where "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government

behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) (internal quotation marks omitted). Here, the Fourth Amendment provides the "explicit textual source of constitutional protection" against an officer's use of excessive force. <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) (holding that all claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and not under a "substantive due process" approach). The Fourth Amendment -- and not "a generalized notion of substantive due process" -- provides the appropriate framework for analyzing Adams's claims. Accordingly, we need not analyze this claim under the Fourteenth Amendment.

With regard to Adams's claim of excessive force under the Eighth Amendment, excessive force claims arising out of an arrest are also analyzed only under the Fourth Amendment. <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989); <u>Brown v. Rinehart</u>, 325 Fed. App'x 47, 50 n.1 (3d Cir. 2009). The Eighth Amendment standard applies after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. <u>Graham</u>, 490 U.S. at 395 n.10; <u>Brown</u>, 325 Fed. App'x at 50 n.1. Thus, we will not analyze Adams's excessive force and cruel and unusual punishment claims under the Eighth Amendment.

The use of excessive force is itself an unlawful "seizure" under the Fourth Amendment. <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989); <u>Carswell v. Borough of Homestead</u>, 381 F.3d 235, 240 (3d Cir. 2004). In deciding whether challenged conduct constitutes excessive force, a court must determine the objective "reasonableness" of the challenged conduct, considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Carswell</u>, 381 F.3d at 240 (internal quotation marks omitted). Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." <u>Green v. New Jersey State Police</u>, 246 Fed. App'x 158, 161 (3d Cir. 2007) (internal quotation marks omitted).

In evaluating reasonableness, a court must take into consideration the fact that "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." <u>Graham</u>, 490 U.S. at 397. Thus, the court should not apply "the 20/20 vision of hindsight,"

but should instead consider the "perspective of a reasonable officer on the scene." Id. at 396.

Officer Selhorst handcuffed Adams in connection with what he believed was a valid arrest warrant. As soon as Adams informed him that she had already turned herself in, and he confirmed that what she said was true, he removed the handcuffs. Def. MSJ, Ex. A at 3. Adams alleges that excessive force was used against her, but does not present any evidence of it.[11] Thus, Adams cannot show an excessive force violation, and Officer Selhorst's use of force -- such as it was -- was reasonable under the circumstances. Thus, we will grant defendants' motion for summary judgment with regard to Adams's excessive force claim and deny her motion for summary judgment on this claim.

### iii. **Malicious Prosecution**

Adams claims that the officers maliciously prosecuted her. Both parties move for summary judgment on this claim.

"To prevail on a malicious prosecution claim under [§] 1983, a plaintiff must show that: (1) the defendants initiated a

---

[11] Adams also claims for the first time in her motion for summary judgment that Officer Mancuso (who is not a named defendant) took her cellphone from her and performed an illegal search of that phone. Because plaintiff raises this claim for the first time in her motion for summary judgment, we will not consider it. See Bell v. City of Phila., 275 Fed. App'x 157, 160 (3d Cir. 2008) (holding that a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment").

criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." McKenna v. City of Phila., 582 F.3d 447, 461 (3d Cir. 2009) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir.2003)). To show the requisite malice, a plaintiff must show that the criminal proceedings were initiated for some purpose other than bringing an offender to justice. McKenna v. City of Phila., No. 07-110, 2008 WL 4450223, at *12 (E.D. Pa., Sept. 30, 2008), aff'd, 582 F.3d 447 (3d Cir. 2009) (citing Neczypor v. Jacobs, 169 A.2d 528, 531 (Pa. 1961)). Such purposes may include the desire for private advantage, ill will or hostility, or circumstances where the accuser does not believe in the guilt of the accused. Id. (citing Restatement (Second) of Torts, § 668 (2008)).

Because we have already found that the officers reasonably believed they had probable cause to execute a warrant against Adams, her claim of malicious prosecution cannot stand. But even if the officers did not have probable cause, there is no evidence in the record that the New Castle County officers initiated anything against Adams for some purpose other than

24

bringing an offender to justice.  Adams claims that because
Selhorst did not subpoena telephone records and caused at least
six trial continuances, this constitutes evidence of Selhorst's
malice.  But as we noted above, Selhorst was not required to
subpoena telephone records to have probable cause, and it was the
prosecuting attorney, not Selhorst, who moved for any
continuances.

Thus, Adams has failed to allege a malicious
prosecution claim.  We will deny plaintiff's motion for summary
judgment on this claim, and grant defendants' motion for summary
judgment with regard to malicious prosecution.

### iv.  **Selective Enforcement**

To establish a selective-enforcement claim, a plaintiff
must demonstrate (1) that she was treated differently from other
similarly situated individuals, and (2) "that this selective
treatment was based on an unjustifiable standard, such as race,
or religion, or some other arbitrary factor . . . or to prevent
the exercise of a fundamental right."  Hill v. City of Scranton,
411 F.3d 118, 125 (3d Cir. 2005) (internal quotation marks and
punctuation omitted).

Adams does not present any evidence or allege any facts
that would lead us to conclude that she was singled out from
other individuals because of her race, religion or any other
arbitrary factor.  There is also no evidence that the police

officers were attempting to prevent her from exercising some

fundamental right.  We will grant defendants' motion for summary

judgment on this claim.

##### v.   **Failure to Train**

Adams claims that defendants failed to train their employees adequately in the proper investigation of a crime, such as to determine if her warrant had already been processed, and for establishing and maintaining customs, policies, practices and procedures that failed to train police officers in the investigation of crimes prior to issuing a warrant.  She also claims that Officer Selhorst refused to allow her to file a police complaint against her neighbors because the police department allegedly does not allow cross-complaints.  Compl. ¶ 18.  Defendants argue in their motion for summary judgment that this failure to train claim must fail because Adams has not named New Castle County among the defendants.  Def. MSJ at 21. Plaintiff moves for summary judgment on this claim as well.  Pl. MSJ at 14.

A § 1983 complaint against a municipality must allege (1) the existence of a custom or policy of the municipality which is of such long standing as to have the force of law, and (2) that one of the municipality's employees violated the plaintiff's civil rights while acting pursuant to this custom or policy.  See Monell v. Dep't of Social Services of City of New York,  436 U.S. 658, 691-94 (1978). The Supreme Court has held that municipal liability under § 1983 only attaches when the "execution of a government's policy or custom, whether made by its lawmakers or

by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . ."  Id. at 694.

Once a § 1983 plaintiff identifies a municipal policy or custom, she must "demonstrate that, through its <u>deliberate</u> conduct, the municipality was the 'moving force' behind the injury alleged."  <u>Bryan County</u>, 520 U.S. at 404 (emphasis in original). If the policy or custom does not facially violate federal law, causation can be established only by "demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." <u>Id.</u> at 407 (citations omitted); <u>see also</u> <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 389 (1989).

In her response to defendants' motion for summary judgment and in her own motion for summary judgment, Adams alleges for the first time that the New Castle County Police Department ("NCCPD"), rather than Officer Selhorst, violated her constitutional rights.  Pl. MSJ at 14; Pl. Resp. at 21-22.[12]

_____

[12] The NCCPD is not a juridical entity.  Section 2.05.201 of the New Castle County Code and 9 Del C. § 1331 do not define the County Police Department as a separate entity or corporate body. Adams disputes defendants' contention that she did not name the New Castle County Police as a defendant.  Adams states in her response "as the Complaint clearly depicts, '<u>etal</u>'. The Caption clearly identifies New Castle County Police." Plaintiff's Reply to Defendant's Answering Brief to Plaintiff's Motion for Summary Judgment ("Pl. Reply") at 3.  Even if the New Castle County Police Department was a juridical entity, this
(continued...)

This claim against the NCCPD cannot stand in light of the fact that she has not named the NCCPD as a defendant.  But even if Adams had named the NCCPD as a defendant, she has failed to allege the exact nature of the custom or policy of the County that gave rise to her injuries, and so she would not have been able to sustain a <u>Monell</u> claim against the NCCPD (or the County) on that basis regardless.

And a § 1983 claim for inadequate training exists "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>City of Canton</u>, 489 U.S. at 388. The failure to train must reflect a "deliberate" or "conscious" choice and the deficiency "must be closely related to the ultimate injury." <u>Id.</u> at 391. Failure to train only becomes "deliberate" where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." <u>Id.</u> at 390.

Failure to train municipal employees can be considered deliberate indifference only where the failure has caused a

---

[12] (...continued)
would not have been enough to put it on notice that it was being sued.  As it is, the Department is not a juridical entity, and therefore we need not further untangle this knot.

<u>pattern</u> of violations. <u>See</u> <u>Bryan County</u>, 520 U.S. at 408-09.

True, it is possible to maintain a claim of failure to train

without demonstrating such a pattern, but <u>Bryan County</u> stressed

that the burden on the plaintiff in such a case is high:

> In leaving open in <u>Canton</u> the possibility
> that a plaintiff might succeed in carrying a
> failure-to-train claim without showing a
> pattern of constitutional violations, we
> simply hypothesized that, in a narrow range
> of circumstances, a violation of federal
> rights may be a highly predictable
> consequence of a failure to equip law
> enforcement officers with specific tools to
> handle recurring situations. The likelihood
> that the situation will recur and the
> predictability that an officer lacking
> specific tools to handle that situation will
> violate citizens' rights could justify a
> finding that policymakers' decision not to
> train the officer reflected "deliberate
> indifference" to the obvious consequence of
> the policymakers' choice -- namely, a
> violation of a specific constitutional or
> statutory right.

<u>Id.</u> at 409. <u>City of Canton</u> noted that an example of deliberate

indifference to an obvious risk would be arming officers

without training them "in the constitutional limitations on the

use of deadly force." <u>City of Canton</u>, 489 U.S. at 390 n.10.

Adams argues in her Complaint that the New Castle

County Police did not allow her to file claims against the

Aidoos, but does not explain how this may have injured her or

what the offending custom or policy was.  Pl. Resp. at 21-22.

Thus, we find that even if Adams had included New Castle County

among the defendants in her complaint, she cannot prove the

requisite link between the County's and Selhorst's actions to support a Monell claim.  Viewing the evidence in the light most favorable to Adams, we will grant defendants' motion for summary judgment on plaintiff's Monell claim against Officer Selhorst, and deny Adams's motion for summary judgment on this claim.

### B.    Conspiring to Violate Civil Rights Under § 1985

Adams has failed to introduce a scintilla of evidence that a conspiracy existed between Officer Selhorst and the unnamed officers to violate her civil rights. Plaintiff, as the nonmoving party, is entitled to have all reasonable inferences drawn in her favor at the summary judgement stage. In the absence of any evidence that there was a meeting of the minds to achieve the alleged conspiracy's objectives, however, she is not entitled to an inference that her bare allegations create an issue of material fact for trial.  Lincoln v. Hanshaw, 375 Fed. App'x 185, 190 (3d Cir. 2010).  Thus, we will grant defendants' motion for summary judgment on this claim.

Adams also claims in her response to defendants' motion for summary judgment that the two unnamed officers failed to intervene when they saw Selhorst "threaten and abuse Plaintiff."  Pl. Resp. at 22.  Defendants argue that Adams has failed to carry her burden to prove their failure to intervene.

To establish a Fourth Amendment violation for failure to intervene, courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior. "If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002) (internal quotation marks omitted). But an officer is only liable if there is a realistic and reasonable opportunity to intervene. Id.

Here, defendants were not aware that they had violated Adams's Fourth Amendment right to be free from unlawful seizures until they checked the CJIS, and as soon as they learned that she had already turned herself in, they released her. There was no time for anyone to intervene between when she was handcuffed and when they learned of the violation. And because we have already found that the force used against Adams was reasonable, there was no violation for which the unnamed officers could have intervened. Thus, we find that Adams cannot show that these unnamed officers failed or refused to intervene in the constitutional violation of her

rights, and we will grant defendants' motion for summary judgment with regard to this claim.

Finally, because we have already found that Adams has not shown any evidence of conspiracy, her claim that defendants failed to prevent a conspiracy to violate her civil rights pursuant to 42 U.S.C. § 1986 must fail as well.

III.   **Common Law Claims**[13]

Adams also asserts common law tort claims against defendants based on slander and defamation, intentional infliction of emotional distress, assault and battery, and trespass.   The defendants argue that they are immune from liability under the Delaware Tort Claims Act.   Del. Code. Ann. Tit. 10 § 4011 (2005).   The Delaware Tort Claims Act states that "[e]xcept as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages."[14] Del.Code Ann. tit. 10 § 4011(a). Adams argues, however, that defendants' actions were performed with wanton negligence or willful and malicious intent.   Pl. Resp. at 29.   Under Del. Code Ann. tit. 10 § 4011(c):

> An employee may be personally liable for
> acts or omissions causing property damage,
> bodily injury or death in instances in
> which the governmental entity is immune
> under this section, but only for those acts
> which were not within the scope of
> employment or which were performed with

---

[13] Given the expenditure of public resources to dispose of Adams's federal claims, we elect to exercise our supplemental jurisdiction in the perhaps fond hope that doing so will prevent further such expenditures.

[14] "Governmental entity" for purposes of the statute includes municipalities, towns, and counties. Del.Code Ann. tit. 10 § 4010(2).

> wanton negligence or willful and malicious
> intent.

But this provision does not apply here because Adams cannot establish that the officers' acts "were not within the scope of employment" or "were performed with wanton negligence or willful and malicious intent." In arresting Adams, the officers were palpably acting within the scope of their official duties. Moreover, viewing the facts in the light most favorable to Adams, the officers' conduct may have been overzealous but it was not malicious or willful. Under Delaware law, conduct is "wanton" only where it reflects a "conscious indifference" or an "I-don't-care attitude." Foster v. Shropshire, 375 A.2d 458, 461 (Del. 1977) (internal quotation marks and citation omitted). As a matter of law, no such conduct can reasonably be inferred here. We therefore grant defendants' motion for summary judgment as to Adams's common law claims. And even if our grant of immunity under the Delaware Tort Claims Act were deemed improvident, as we explain below, Adams has failed to show that she should succeed on any of her common law claims.

## A.  Slander and Defamation

Adams claims that the officers slandered and defamed her "by presenting false statements to obtain a warrant on Plaintiff." Compl. ¶ 39. The Delaware courts have established five elements that a plaintiff must plead to form a claim for

defamation, which incorporates both libel and slander. Those elements are: "(1) the defamatory character of the communication; (2) publication; (3) that the communication refers to the plaintiff; (4) the third party's understanding of the communication's defamatory character; and (5) injury." <u>Better v. Mitchell</u>, No. 04-05-0053, 2004 WL 3312524, at *2 (Del. Ct. Comm. Pl. Oct. 5, 2004) (citing <u>Read v. Carpenter</u>, No. 95C-03-171, slip. op. (Del. Super. Ct. Jun. 8, 1995)). Adams contends in her response that she alleges slander <u>per se</u> (because the alleged defamatory statements imputed to her a crime), and thus that she does not have to allege a sixth element required of regular slander claims -- special damages. Pl. Resp. at 26.

Adams's claim cannot succeed because she fails to allege defendants' publication of these statements to anyone other than the Magistrate Judge who signed the warrant. "When allegedly defamatory statements are made to a magistrate or other judicial officer, for the purpose of initiating a criminal prosecution, they are absolutely privileged." <u>Boulden v. Turner</u>, No. 04C-10-31, 2007 WL 3378662, at *4 (Del. Super. Apr. 12, 2007). <u>Boulden</u> also noted that "[a]n absolute privilege affords a complete defense irrespective of accuracy or malice." <u>Id.</u> (quoting <u>Lengle v. Dukes</u>, 1982 Del. Super. LEXIS 757).

Because defendants only made their statements to a Magistrate Judge, they had an absolute privilege to make them.

Thus, we will grant defendants' motion for summary judgment on Adams's slander/defamation claim.

### B.   Intentional Infliction of Emotional Distress

Both parties have moved for summary judgment on Adams's intentional infliction of emotional distress claim.  Under Delaware law, liability for intentional infliction of emotional distress "is only found when the alleged conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." O'Leary v. Telecom Resources Service, LLC, No. 10C-03-108, 2011 WL 379300, at *6 (De. Super. Ct. Jan. 14, 2011).  "The case [must be] one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  Mattern v. Hudson, 532 A.2d 85, 86 (De. Super. Ct. 1987).

There is no record evidence that Officer Selhorst engaged in any conduct that was so severe that a reasonable person could not be expected to endure it.  Def. MSJ, Ex. A. Adams was never subjected to extreme or outrageous conduct. Thus, she has failed to make out a prima facie case of intentional infliction of emotional distress.  We will grant defendants' motion for summary judgment on this claim and deny Adams's motion for summary judgment on it.

## C. **Assault and Battery**

Delaware law defines assault and battery as "the intentional, unpermitted contact upon the person of another which is harmful or offensive." <u>Lewis v. Foster</u>, No. 04-1350, 2009 WL 3074683, at *7 (D. Del. Sept. 25, 2009). Because we have found that the force used against Adams was reasonable, and because police officers are allowed to use reasonable force in arresting a suspect, we would have granted defendants' motion for summary judgment on this claim regardless of the § 1983 niceties canvassed above.

### D.  **Trespass**

To assert a viable intentional trespass claim, a plaintiff in Delaware must show that (1) the plaintiff is in lawful possession of the land, (2) the defendant entered onto the plaintiff's land without consent or privilege, and (3) damages. Williams v. Manning, No. 05C-11-209, 2009 WL 960670, at *8 (Del. Super. Ct. Mar. 13, 2009).  Here, Officer Selhorst went to Adams's residence to execute what he reasonably believed was a valid arrest warrant.  Adams asked that he meet her in her garage so that her pets would not escape.  Def. MSJ, Ex. A at 3.  Adams alleges in her Complaint that she suffered "mental anguish, pain and suffering, subjected to public scorn, hatred, ridicule, economic losses and threats to her physical safety" as a result of Officer Selhorst trespassing on her land.  Compl. ¶ 60.  Adams has not cited specific facts of any damages she or her property sustained as a result of the alleged trespass, and indeed she invited Officer Selhorst into her garage.  Def. MSJ, Ex. A at 3 ("Contact was made with Ashley in her garage since she was afraid that her pets would get out of the house.").  Thus, Adams's trespass claim cannot survive.

## IV.  **Amending the Complaint**

In her January 6, 2011 response to defendant's motion, Adams requested the opportunity to amend her complaint.  A district court should not dismiss a pro se complaint without allowing the plaintiff an opportunity to amend her complaint unless an amendment would be inequitable or futile.  Ray v. First Nat. Bank of Omaha, No. 10-3582, 2011 WL 488741, at *2 (3d Cir. Feb. 11, 2011).

Here, there is no amendment Adams could make to her Complaint that would make her state tort claims viable because the defendants are police officers.  Similarly, it would be futile for Adams to amend her false arrest, false imprisonment, conspiracy, and failure to prevent conspiracy claims because Officer Selhorst (and the unnamed officers) are entitled to qualified immunity.  It would be futile for Adams to amend her abuse of process and malicious prosecution claims against Officer Selhorst because he was not responsible for prosecuting her. Finally, because Adams was not incarcerated when the alleged events happened, it would also be futile for her to amend any claim of cruel and unusual punishment.

As to Adams's claims of excessive force, selective enforcement, and failure to train, she months ago waived any further opportunity to prolong this exercise.  See note 5, above.

We therefore conclude that it would be inequitable to the defendants to allow this tempest to continue any longer.